THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. GEORGE W. CUNITZ, Defendant-Appellant.

Fifth District   No. 5—86—0572

Opinion filed June 18, 1987.

_____

[1]Justice Karns replaces Justice Jones, who retired after the case was taken under advisement.

520

Randy E. Blue and Michelle A. Zalisko, both of State Appellate Defender's Office, of Mt. Vernon, for appellant.

Terry M. Green, State's Attorney, of Benton (Kenneth R. Boyle, Stephen E. Norris, and Kim G. Noffke, all of State's Attorneys Appellate Service Commission, of counsel), for the People.

JUSTICE KASSERMAN delivered the opinion of the court:

Defendant George W. Cunitz was indicted by a grand jury in Franklin County on January 30, 1984, for armed robbery and unlawful use of weapons. Prior to trial, defendant filed a motion to suppress evidence which was denied on June 16, 1984. A jury subsequently found defendant guilty of both offenses on October 22, 1985, but judgment was not entered on the unlawful use of weapons charge. Following a hearing on defendant's post-trial motion on June 7 and July 10, 1985, defendant was sentenced on August 21, 1985, to serve 18 years for armed robbery. Defendant thereafter perfected the instant appeal.

Defendant's first contention on appeal is that the trial court improperly denied his motion to suppress evidence. Defendant contends that his arrest and the arrest of his companion, William Hungate, was merely a pretext for an otherwise illegal search. Defendant's attorney filed a motion to suppress evidence illegally seized when defendant was arrested on January 19, 1984, alleging that the search of a truck was not incident to a lawful arrest, was not executed pursuant to a warrant, and was not done with defendant's consent. At the hearing on defendant's motion to suppress, testimony was given regarding the armed robbery of the West Frankfort Huck's convenience store and the investigation which followed, ultimately culminating in the arrest of defendant and William Hungate.

Charles Broy, the chief of police for the West Frankfort police department, testified that he was conducting surveillance of a house in West Frankfort in the early morning hours of January 19, 1984. The temperature was 10 below zero and there was no traffic on the roads.

With the exception of an older black step-side pickup that he saw around 2:30 a.m., the only other vehicles Broy saw that morning were other police vehicles. At approximately 2:45 a.m. he heard over the radio that the West Frankfort Huck's had been robbed.

Tom Mandrell, a West Frankfort police officer, testified that he was on duty January 19, 1984, when at 2:44 a.m. he received a call from his dispatcher informing him that the West Frankfort Huck's had been robbed. Mandrell proceeded to Huck's and received a description of the robber from Patricia Clark, the employee on duty. Clark described the robber as being approximately 6 feet 2 inches tall, having a slim build, and wearing a blue windbreaker, a pair of brown suede gloves, a dark baseball cap and a dark nylon stocking over his face. Ms. Clark told Mandrell that the robber stuck his hand in his pocket indicating that he had a gun. The robber left the store on foot. Mandrell conveyed the description of the robber to other law enforcement units over the radio.

Dan Owens, a Benton police officer, heard about the Huck's robbery over his radio and went to the south edge of Benton to monitor any traffic coming up Route 37 from West Frankfort. Owens testified that there was "hardly any traffic at all out" that night. Owens saw an older model black pickup truck bearing Montana license plates come into Benton from West Frankfort. Owens ran a routine check on the license plates of the truck which revealed nothing "other than the truck was not stolen and it was a valid plate." Owens subsequently went to the police department, called the West Frankfort police department and talked with them about the truck. Charles Broy, the chief of police for West Frankfort, told Owens that he had seen a vehicle fitting the description of the truck just prior to the robbery. Broy described the truck he had seen as an old black step-side pickup. Broy told Owens he was coming to Benton to try to get a look at the truck.

Owens started to look for the truck but could not immediately locate it. He called West City police officer Gary Hall and enlisted his aid in locating the pickup. Within a few minutes, Hall had found the pickup parked outside the Plaza Restaurant near Interstate 57. Owens proceeded to that location. Broy, accompanied by three other West Frankfort officers, subsequently arrived and confirmed that the pickup was the same one he had seen in West Frankfort.

The four West Frankfort officers, dressed in street clothes, entered the restaurant and observed defendant and another man, later identified as William Hungate, eating breakfast. Hungate was wearing a black baseball-type cap with "Jack Daniels" on the front. Defendant fit the description of the robber which Broy had previously received—

about 6 feet 2 inches tall, slim build. When defendant and Hungate left the restaurant, so did the officers.

Defendant and Hungate got into the black Ford pickup and drove toward the Benton square followed by Officer Owens. On several occasions, Owens and Broy observed the pickup weave into a lane restricted to left turns only. Owens described one such maneuver as "pretty radical." Owens stopped the truck just east of the Benton police department. As Owens got out of the car, the West Frankfort police officers pulled up behind him. Owens went to the driver's side of the pickup and asked the driver, William Hungate, to step out. Owens noticed the odor of alcohol as the driver opened the door and saw an open can of Busch beer on the floorboard. Owens began searching for further evidence of alcohol. As he searched, the West Frankfort officers approached the truck and Owens asked them to assist him. Charles Broy went to the passenger side of the truck, where defendant was seated. Owens asked defendant to get out of the truck and as he did so Owens heard a noise similar to a can's being dislodged. Broy found a beer can between the door and the seat. Owens then observed a wrinkled blue nylon garment and gloves lying in the truck. Broy picked up the garment (a windbreaker), and a nylon stocking with two holes cut in it fell to the floorboard.

Hungate and defendant were placed under arrest and, due to the severe cold weather, were taken to the police department, which was across the street. Owens stayed with the vehicle and called a wrecker. As the wrecker hooked up the truck, Owens searched through the truck for personal items of value to the two men arrested. Owens found an open container of liquor, some more open beer and, in the unlocked glove compartment, a .32 caliber handgun.

Defendant testified at the suppression hearing that he was arrested in the early morning hours of January 19, 1984. He was the passenger in William Hungate's black, short-bed, Ford pickup when Hungate's truck was stopped by the police. The police had no warrant and were not given consent to search the truck.

In the search of the truck which followed the stop, a number of personal items, which defendant admits were his, were seized by the police officers: a blue windbreaker, a pair of brown suede gloves, an unspecified amount of cannabis, some beer and an open bottle of whiskey. Defendant admitted that he and Hungate had open alcohol in the car and that they had been drinking. Defendant repeatedly denied knowing anything about the nylon stocking found in the truck. He also denied ownership of the handgun found in the glove compartment.

The trial court denied defendant's motion to suppress, holding that

the officers had probable cause to stop the vehicle because it was weaving, because one of the occupants fit the description of the man who robbed Huck's, and because the officers were aware of other factors sufficient to establish probable cause. The court noted that "once the vehicle was stopped and the officers observed open liquor," the search was proper as incident to a lawful arrest.

Defendant contends that his arrest was a mere pretext to search the pickup truck. Defendant contends the real reason for stopping the pickup truck was to enable the officers to search for evidence connecting defendant to the robbery of the West Frankfort Huck's store, an offense unrelated to the traffic offense for which defendant was arrested. For that reason, defendant contends his arrest and the subsequent search of the pickup truck were violations of the fourth amendment prohibition against unreasonable searches and seizures. Defendant further contends that the officers attempted to circumvent the fourth amendment by manipulating the arrest to ensure defendant's presence inside the place that they wished to search—Hungate's pickup truck. Defendant asserts that the officers deliberately delayed stopping and questioning defendant until he was inside Hungate's pickup truck, noting that any investigation of defendant and Hungate about the robbery could have easily taken place in the restaurant or its parking lot. Instead, defendant contends, the officers waited until the defendant was in the truck before stopping him so that they could manipulate the situation to enable them to search the truck as a search incident to an arrest.

From our review of the record, we conclude that the search in the instant case can be justified on more than one basis. From the perspective of Officer Owens, the vehicle in which defendant was a passenger was seen on several occasions weaving into the lane restricted to left turns. This provided Officer Owens with articulable facts establishing a substantial possibility that the truck was being driven by an intoxicated driver and an investigatory stop was therefore proper. (See *People v. Loucks* (1985), 135 Ill. App. 3d 530, 481 N.E.2d 1086.) As the driver got out of the pickup, Officer Owens smelled the odor of alcohol, which further confirmed his suspicion that the driver had been drinking, and he saw open containers of alcohol in plain view inside the pickup. Since the open containers of alcohol constituted the offense of illegal transportation of alcohol (Ill. Rev. Stat. 1985, ch. 95½, par. 11—502), Officer Owens was justified in seizing those containers which were in plain view (*Coolidge v. New Hampshire* (1971), 403 U.S. 443, 29 L. Ed. 2d 564, 91 S. Ct. 2022) and searching the vehicle for any other evidence of open alcohol. (See Ill. Rev. Stat.

1985, ch. 38, par. 108—1.) We also note that the search of the truck would have been justified even if Officer Owens were unable to ascertain whether or not the cans were opened. See *People v. Watts* (1981), 93 Ill. App. 3d 420, 417 N.E.2d 247.

Additionally, we find that Officer Owens had probable cause to stop the pickup and arrest the defendant for the armed robbery of the West Frankfort Huck's convenience store. (See *People v. Lippert* (1982), 89 Ill. 2d 171, 432 N.E.2d 605.) In *Lippert*, a police officer was found to have probable cause to stop the defendant's vehicle and arrest defendant. The facts in *Lippert* reveal that about 25 minutes after an armed robbery, the victims gave a description of the robbers to the police—four men, one about 5 feet 11 inches tall with medium-length blond hair, and another having bushy brown hair and wearing a blue jacket. A deputy sheriff, while searching the general area (a rural, sparsely populated area), stopped the defendant's vehicle, which was without license plates. The deputy also observed that the driver (the defendant) had medium-length light brown hair, and the passenger had bushy hair and was wearing a blue coat. When the deputy approached the vehicle, he saw that it had a temporary registration certificate in the window. On appeal, the supreme court held that the deputy had probable cause to arrest. At the time that the deputy stopped the defendant's vehicle, he knew that a crime had recently been committed and had descriptions of the robbers. Although the descriptions were general, the area in which the offense occurred was rural, sparsely populated, lightly travelled and it was late at night, thus, "the number of individuals in that area who might be expected to fit these descriptions, particularly the blue-jacket and bushy-hair portions, was sufficiently limited to avoid arbitrary or wholesale arrests." (*People v. Lippert* (1982), 89 Ill. 2d 171, 180, 432 N.E.2d 605, 609.) The supreme court stated that the deputy "had sufficient cause to stop the car for investigative purposes, either on the grounds of his observation that its occupants seemed to match the descriptions he was given or that the car was without license plates. Upon a closer view of the defendant, the deputy also observed that the defendant matched the height description, and that Long [the passenger], with his more distinctive bushy hair and blue jacket, fit the description rather well. The combination of two suspects, both fitting the descriptions, is another factor to be considered in determining the probabilities involved in the determination of 'probable' cause." 89 Ill. 2d 171, 181, 432 N.E.2d 605, 609.

In the instant case, the information known to Officer Owens provided probable cause to arrest the defendant and search the truck. Officer Owens had been given a description of the robber, his apparel

at the time of the robbery, and the suspect pickup truck prior to the traffic stop. As in *Lippert*, traffic was minimal on the night of the robbery because of the late hour and the severe weather conditions. An investigatory stop would have been in order based upon the facts known to Officer Owens at that time. (See *People v. Lippert* (1982), 89 Ill. 2d 171, 432 N.E.2d 605.) Thus, disregarding Hungate's erratic driving, an investigatory stop would have placed Officer Owens in a position to smell the odor of alcohol in the truck and see open containers of liquor. And as we have noted earlier, a search of the truck for other evidence of illegal transportation of alcohol would have then been justified and, during the course of the search, discovery of the clothing in question would have been inevitable.

■ We also conclude that the same basis that supports Officer Owens' search of the truck applies with equal force to the search of the truck by Officer Broy, the West Frankfort chief of police. Officer Broy was aware of additional facts which helped even more to establish probable cause to search. Broy knew that the pickup truck was the only vehicle other than police vehicles seen in the vicinity of the West Frankfort Huck's prior to the robbery and he had seen the truck a mere 15 minutes before being informed of the robbery.

■ We find that the officers had probable cause to stop the truck and arrest defendant for the armed robbery. We also find alternatively that they had articulable facts to justify an investigatory stop and temporary questioning in regard to the robbery, at which time they would have become aware of additional facts justifying the search. Furthermore, they observed the truck being operated in an erratic manner which justified the stop and subsequent developments would have justified the search. Accordingly, the seizure of defendant's blue windbreaker and his brown suede gloves was proper. We find that defendant has no standing to challenge the seizure of the nylon stocking and the handgun found in the truck since he had no interest in the pickup, which belonged to Hungate, and he specifically disclaimed ownership or interest in the stocking and handgun. See *Rakas v. Illinois* (1978), 439 U.S. 128, 58 L. Ed. 2d 387, 99 S. Ct. 421.

■ ■ We note that neither in the trial court nor on appeal has defendant argued that the police searched the truck or arrested the defendant without probable cause to do so. Rather, defendant's argument centers on the motives of Officer Broy and is founded on an isolated statement by Broy that he wished he could have searched the pickup truck. As part of his "improper motivation" argument, defendant claims that the police in the instant case "deliberately delayed stopping and questioning defendant until he was inside Hungate's

pickup." Defendant presupposes that the police orchestrated the stop so that they could search the pickup. Defendant ignores the fact that the police could not be sure that the defendant was a passenger in the suspect pickup until he left the restaurant with Hungate, got into the truck and drove away. The connection between the defendant and the pickup was a crucial element, necessary to establish probable cause to arrest him for the armed robbery. We therefore find that the delay was justified in the case at bar. We also find that the motives of Officer Broy in the instant case did not invalidate an otherwise lawful search.

We note that the alleged pretextual motivation of the arresting officer did not vitiate the validity of the arrest and was not a controlling factor in *Amador-Gonzalez v. United States* (5th Cir. 1968), 391 F.2d 308, the principal case relied upon by defendant. Citing *Amador-Gonzalez*, defendant urges that his arrest for a traffic offense was a mere pretext to enable the officers to search the truck. In *Amador-Gonzalez*, narcotics officers observed two known narcotics traffickers, the Tartaglia brothers, near the Mexican border, walking across the bridge into Mexico. The two men were arrested upon their return to the United States on the suspicion that they were concealing narcotics. The officers also kept watch over the Tartaglia car parked near the bridge. About an hour after the Tartaglias were arrested, the defendant appeared in his own car, circled the area for some time, and parked near the Tartaglia car. As the defendant began circling the area again, a narcotics officer followed him and noticed that the defendant committed two minor traffic offenses. The defendant was arrested for speeding. As the defendant got out of his car, the officer observed a bump in the driver's seat, reached under the torn upholstery and pulled out a bundle of heroin. At a hearing on the motion to suppress the heroin, one officer testified that when they stopped the defendant's car for the traffic offense, they were looking for narcotics because they suspected him of being connected with the Tartaglia brothers.

On appeal in *Amador-Gonzalez*, the United States Court of Appeals for the Fifth Circuit held that the heroin found in the defendant's car should have been suppressed as a product of an unreasonable search and seizure. The court determined that there was no probable cause to arrest the defendant for possession of narcotics until after the search following the arrest for the traffic arrest. The court noted that the case did not fall within the plain view exception permitting an officer to investigate and seize contraband visible to him without a search warrant. (391 F.2d 308, 312.) The court further noted that the search was not within the Carroll doctrine (see *Carroll v. United States* (1925), 267

U.S. 132, 69 L. Ed. 543, 45 S. Ct. 280 (permitting a warrantless search of a vehicle not incident to an arrest when an officer has probable cause to believe that a vehicle is being used to carry contraband)). (391 F.2d 308, 312.) In *Amador-Gonzalez*, the government sought to justify the search of the defendant's vehicle as a search incident to arrest. The court noted there can be no lawful incidental search for a traffic violation. "There are no fruits or instrumentalities of the 'crimes' of unlawful parking, speeding, driving without registration or license, or driving while intoxicated (an exception exists with respect to the latter in permitting search for open bottles of liquor)." (391 F.2d 308, 317.) This noted exception provides additional support for the search of Hungate's pickup in the case at bar.

While the evidence in *Amador-Gonzalez* demonstrated that the traffic arrest of the defendant was a pretext to enable the arresting officer to search the vehicle, we do not find that the same can be said in the case at bar. The arresting officer in *Amador-Gonzalez* was a narcotics officer. He did not generally make traffic arrests and did not carry a ticket book. Moreover, as the court noted, a traffic arrest is usually made immediately upon the commission of the offense. In *Amador-Gonzalez* the detective had observed defendant make the same improper turn several times over a period of an hour without arresting him. The court saw this delay as evidence of a pretextual arrest used to justify an otherwise illegal search. The court in *Amador-Gonzalez* was concerned with the danger that a mere traffic infraction could be used to search a vehicle when a search had no relation to the arrest which preceded it. Absent special circumstances which were not present in *Amador-Gonzalez*, a search of a vehicle not related to the nature of the offense for which the arrest is made is impermissible. (391 F.2d 308, 317.) In the case at bar, the search had a relation to the nature and purpose of the arrest which preceded it.

We accordingly find that the seizure and search in the instant case was lawfully accomplished and was unobjectionable under the fourth amendment and that the trial court's denial of defendant's motion to suppress the evidence should be affirmed.

Defendant's second contention on appeal is that he was denied effective assistance of counsel when his trial counsel failed to object to the State's Attorney's allegedly improper bolstering of William Hungate's testimony.

During the direct examination of William Hungate, who was also charged with the armed robbery of the West Frankfort Huck's, the following exchange took place between Hungate and the State's Attorney:

"Q. [State's Attorney]: Now Mr. Hungate, you have occasion to make statements to the police?

A. [Hungate]: Yes, I did.

Q. And you later had occasion to make other statements; is that right?

A. Umm-humm.

Q. At any point in time have you denied what you've told me right here?

A. No."

Defense counsel did not object to this portion of the examination of Hungate. Defendant claims the foregoing exchange constituted improper bolstering of Hungate's testimony and denied defendant a fair trial. Defendant cites various cases in support of this proposition. However, we find that in each of the cases cited the substance of the prior statement was disclosed to the jury. This did not happen in the instant case. Rather, Hungate merely mentioned that he had made prior statements to the police and stated that he had never denied anything in the testimony he had given at trial. The jury was not informed of the substance of those prior statements.

■ To prove ineffective assistance of counsel, defendant must overcome the strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance and show that the claimed deficient performance by counsel prejudiced the defense. This requires a showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result cannot be relied on as having produced a just result. (*Strickland v. Washington* (1984), 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052.) Applying the Strickland standard to the case at bar, we find that defendant can make neither showing and that the alleged error upon which defendant complains, if it existed, is harmless beyond a reasonable doubt.

At trial, Patricia Clark testified that she was working at Huck's in West Frankfort when it was robbed. Ms. Clark said a man came in around 2:40 a.m. wearing a light blue nylon jacket with something tied around his face. The man gestured, indicating he had a gun, and Clark thought she saw the hammer of a gun protruding from the man's jacket. The robber left with $70, taken from Huck's. Clark said the robber was tall and slim; his stature was identical to that of the defendant. Clark identified People's exhibits Nos. 1, 3, and 4 as the jacket and gloves the robber wore. She was unable to positively identify People's exhibit No. 2, a dark nylon stocking, as the stocking worn by the robber.

Charles Broy, chief of the West Frankfort police department and

Officer Dan Owens of the Benton police department testified substantially as they had at the hearing on defendant's motion to suppress. Chief Broy elaborated somewhat on the circumstances under which he first sighted Hungate's pickup on the night of the robbery. He stated that he saw the pickup travelling in the direction of Huck's that night. It turned north (the direction of Huck's) about two blocks from Huck's when he lost sight of it. Officer Owens identified the items he seized from Hungate's truck. Richard Studt, a West Frankfort police officer on the date of the robbery, testified that he examined the contents of defendant's wallet after defendant was arrested and found $68 in cash.

William Hungate testified that he and defendant were riding around in Hungate's black Ford pickup on the night of the robbery and eventually ended up in West Frankfort. Defendant was wearing a light blue windbreaker. Hungate identified People's exhibit No. 1 as defendant's jacket. Defendant started talking about robbing Huck's. Defendant told Hungate to stop about two blocks east of Huck's. He told Hungate to wait as "he'd be right back." He ran back to the truck shortly thereafter, wearing Hungate's hat and the light blue jacket. He told Hungate to "drive." Defendant changed his boots and jacket and put Hungate's girlfriend's gun (People's exhibit No. 5) back in the glove compartment. Hungate said that was the first time he had seen the gun that evening. Defendant told Hungate he had "just ripped off the Huck's store." Defendant had $68 inside a paper bag. Hungate and defendant then went to the Plaza Restaurant in West City, where they ate breakfast. They were stopped by the police after they left the restaurant. Hungate admitted that he and defendant had open alcohol in the truck.

■ We find that the foregoing evidence was overwhelming and established defendant's guilt beyond a reasonable doubt. Even if the State's Attorney's direct examination of Hungate was error, and counsel should have objected to it, given the evidence against the defendant, the error was harmless and did not deprive defendant of a fair trial.

Accordingly, the judgment of the circuit court of Franklin County is affirmed.

Affirmed.

KARNS, P.J., and HARRISON, J., concur.