THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. ROBERT ALLEN, Defendant-Appellant.

First District (5th Division)   No. 1—91—2621

Opinion filed November 10, 1994.—Rehearing denied December 16, 1994.

Michael J. Pelletier and Patricia Unsinn, both of State Appellate Defender's Office, of Chicago, for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb, Janet Powers Doyle, and Lawrence X. O'Reilly, Assistant State's Attorneys, of counsel), for the People.

JUSTICE COUSINS delivered the opinion of the court:

Defendant Robert Allen (Allen) was found guilty of two counts of armed robbery in a jury trial. Allen was sentenced to a term of 40 years, to be served consecutively to a 55-year sentence Allen had already received. Defendant appeals, alleging that (1) he was arrested in violation of his fourth amendment rights where the police conducted a search for weapons without probable cause; (2) the trial court abused its discretion in denying the defendant a continuance to locate an alibi witness; (3) defendant's rights were violated when his jury read police reports not in evidence, even though defendant refused the judge's offer of a mistrial; and (4) consecutive sentences were imposed without the necessary statutory finding that the defendant represented a danger to the public.

We affirm.

## BACKGROUND

During the afternoon of April 8, 1990, two men robbed Robin's Drugs. At 5 p.m. on April 18, 1990, Detective Patrick Brosnan observed a car traveling at a high rate of speed. Detective Brosnan followed the vehicle and observed its three occupants, including defendant as a passenger, stop at a liquor store and go inside. Detective Brosnan then ran the license plate through the patrol car's computer and found that the vehicle had been reported stolen.

When the car's three occupants returned to their vehicle from the liquor store, Detective Brosnan and his partner, Officer Sellers, approached the vehicle and removed the driver, Tony Anderson (Anderson). Detective Brosnan approached the passenger side of the vehicle and conducted a pat-down search of defendant as he sat in the back seat. As Detective Brosnan finished his pat-down he noticed a black jacket draped over defendant's feet. Brosnan patted down the jacket and felt a revolver, following which defendant was placed under arrest.

Defendant denied ownership of the jacket and indicated that he did not know who its owner was. Defendant further claimed that he was unaware of the jacket's presence in the back seat until it was discovered by Detective Brosnan.

On April 27, 1990, Anderson and Allen were identified by Lalit Chheda (Chheda) in a lineup as the perpetrators of the Robin's Drugs robbery. Allen was charged with two counts of robbery.

Prior to Allen's trial for the Robin's Drugs robbery, there was a hearing on Allen's motion to quash arrest and suppress evidence. During the hearing, Allen continued to deny any possessory interest in the jacket or gun. The trial court held it was not an unreasonable intrusion to pat down the occupants of a stolen vehicle. Finding that Allen was in close proximity to the weapon, the court also found probable cause to arrest Allen, and the motion was denied.

At trial, Chheda testified that on April 8, 1990, he was working as manager at Robin's Drugs when he observed defendant and Anderson enter the store and purchase a bottle of wine. Chheda related that as he put money from the purchase into his cash register, Anderson stepped behind the counter and pointed a gun at him while defendant stood at the door of the store. Anderson removed money from the register as defendant handcuffed Chheda behind his back. Chheda identified the gun found at Allen's feet as resembling the gun used in the robbery. Chheda testified that on April 27, 1990, Chheda viewed Allen and Anderson in a six-man lineup and identified Allen and Anderson as the men who robbed the store.

Gaysene Henderson, a Robin's Drugs employee, testified that on April 8, 1990, she observed two black males enter the store and

proceed to the front. She confirmed the details of Chheda's testimony but was unable to identify Allen as one of the robbers. Lamont Hall was a customer in the store. Mr. Hall testified that Allen was a participant in the robbery.

After the State rested, the court took a recess to allow defense counsel to locate an alibi witness. This witness had never been personally served, but a subpoena had been left in his mailbox and later the defense had contacted the witness by phone. Defense counsel had told the court the previous day that he expected the witness to be available that morning. However, after contacting the witness the previous evening, defense counsel had an understanding that the witness would be in court by 1 p.m. or 1:30 p.m. Upon hearing of the delay, the court completed jury instructions for the case, then took an early and extended lunch break until 2 p.m. to provide defense counsel enough time to procure his witness. Defense counsel was unable to locate or communicate with the witness during this period. Following lunch, defense counsel requested a continuance at 2:25 p.m. because he was still unable to produce his witness. The court denied the request, and the defense rested without presenting any evidence.

After the jury retired to deliberate, it was brought to the court's attention that a folder containing police reports involving defendant and Anderson had been left on a table in the jury room. The reports had been looked at by some of the jurors.

The trial judge suggested that a mistrial be declared. Defense counsel requested the jurors be polled first. The court granted the request, and following the polling defense counsel requested time to confer with his client to consider the option of keeping the jury. After conferring with defendant, defense counsel indicated he would not request a mistrial; rather, defendant wished to keep the current jury members upon the condition that they be admonished by the court to consider only the evidence presented at trial.

After the trial judge's admonishment, the jury continued deliberations and then returned verdicts finding defendant guilty of both counts of armed robbery. Defendant was sentenced to 40 years of imprisonment to be served consecutively to a previous 55-year sentence. Defendant now appeals.

OPINION

I

A trial court's determination on a motion to suppress will not be overturned unless it is manifestly erroneous. (*People v. Galvin* (1989), 127 Ill. 2d 153, 162, 535 N.E.2d 837.) In the instant case, the trial

court correctly found that the pat-down search of defendant is allowed under the fourth amendment as a reasonable precaution necessary for the protection of police officers. The instant case is very similar to *People v. Santoro* (1989), 192 Ill. App. 3d 895, 549 N.E.2d 708, and *People v. Williams* (1975), 28 Ill. App. 3d 189, 328 N.E.2d 89. *Santoro* and *Williams* both allowed a pat-down of car passengers under circumstances inherently more dangerous than a mere traffic stop. In *Santoro*, the police had a reasonable suspicion the car was stolen, and a possible weapon (later determined to be a toy gun) was seen under the passenger's seat. In *Williams*, the police suspected the vehicle was stolen, and a flask of white powder was found upon a pat-down of the driver.

In the instant case, as in *Williams*, the trial court was not manifestly erroneous in finding that it was necessary to pat down passengers for the officer's safety once probable cause existed to arrest the driver of the vehicle. *Williams* and *Santoro* stated the following:

> " 'We think that *Terry* [*Terry v. Ohio* (1968), 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868] recognizes and common sense dictates that the legality of such a limited intrusion into a citizen's personal privacy extends to a criminal's companions at the time of arrest. It is inconceivable that a peace officer effecting a lawful arrest of an occupant of a vehicle must expose himself to a shot in the back from [the] defendant's associate because he cannot, on the spot, make the nice distinction between whether the other is a companion in crime or a social acquaintance. All companions of the arrestee within the immediate vicinity, capable of accomplishing a harmful assault on the officer, are constitutionally subjected to the cursory "pat-down" reasonably necessary to give assurance that they are unarmed.' "

*Santoro*, 192 Ill. App. 3d at 899-900, and *Williams*, 28 Ill. App. 3d at 194-95, quoting *United States v. Berryhill* (9th Cir. 1971), 445 F.2d 1189, 1193.

Defendant relies on *Ybarra v. Illinois* (1979), 444 U.S. 85, 62 L. Ed. 2d 238, 100 S. Ct. 338, to dispute the trial court's ruling. However, in *Ybarra* the defendant was merely a customer in a tavern, and courts have consistently held that different rules apply for searches into mobile vehicles as opposed to buildings. (*Rakas v. Illinois* (1978), 439 U.S. 128, 148, 58 L. Ed. 2d 387, 404, 99 S. Ct. 421, 433.) In addition, it is much more likely a car passenger is a companion to the driver, and perhaps involved in the driver's criminal behavior, than the public customer in the tavern in *Ybarra*.

█ Moreover, in the instant case there was individualized

suspicion which could be directed towards the defendant. A passenger in a stolen vehicle may be found guilty of possession of a stolen motor vehicle when the circumstantial evidence shows that a reasonable person would have believed the vehicle was stolen. (*People v. Tucker* (1989), 186 Ill. App. 3d 683, 694.) When a prohibition applies to a passenger as well as the driver, the police officer has a legitimate fear for his safety. (*People v. Bradi* (1982), 107 Ill. App. 3d 594, 599, 437 N.E.2d 1285 (police suspected open liquor container in vehicle).) Thus, as opposed to defendant's assertion, the police did have reason to suspect Allen's involvement in criminal activity, and their patdown of him was proper.

■ Even assuming *arguendo* that the search was improper, Allen has no standing to object to the search. Upon the arrest of an occupant of a vehicle, any area of the vehicle may be lawfully searched. (*New York v. Belton* (1981), 453 U.S. 454, 69 L. Ed. 2d 768, 101 S. Ct. 2860.) Moreover, "[a] person who is aggrieved by an illegal search and seizure only through the introduction of damaging evidence secured by a search of a third person's premises or property has not had any of his Fourth Amendment rights infringed." (*Rakas*, 439 U.S. at 134, 58 L. Ed. 2d at 395, 99 S. Ct. at 425.) A legitimate expectation of privacy may confer a legally sufficient interest (*Rakas*, 439 U.S. at 143, 58 L. Ed. 2d at 401, 99 S. Ct. at 430), but one who is wrongfully on the premises may not invoke the privacy of the premises searched. (*People v. Bookout* (1993), 241 Ill. App. 3d 72, 76, 608 N.E.2d 598.) The defendant did not have permission of the owner to possess the stolen vehicle, and thus defendant could not challenge the search of the vehicle.

As to whether defendant's fourth amendment rights were violated by a personally intrusive search, defendant disclaimed any interest in the jacket or revolver at his suppression hearing. When a defendant fails to ever claim an ownership or possessory interest in property, the defendant loses standing to dispute the search and suppress the evidence. *People v. Casas* (1992), 234 Ill. App. 3d 847, 853, 601 N.E.2d 798; *People v. Dowery* (1988), 174 Ill. App. 3d 239, 245, 528 N.E.2d 214; *People v. Cunitz* (1987), 157 Ill. App. 3d 519, 526, 510 N.E.2d 471.

The defendant contends that the State has waived its standing argument by not raising it in the trial court. The government may lose the right to present factual issues when it has failed to raise such questions in a timely fashion during the litigation. (*Steagald v. United States* (1981), 451 U.S. 204, 209, 68 L. Ed. 2d 38, 44, 101 S. Ct. 1642, 1646.) However, the general rule is that a prevailing party may raise in support of a judgment any reason appearing in the record.

(*People v. Franklin* (1987), 115 Ill. 2d 328, 336, 504 N.E.2d 80.) When the State prevails in the trial court on a motion to suppress, it has not waived other arguments to support the trial court's holding when its theory on appeal is supported by the record and is not inconsistent with the position it took in the trial court. *People v. Foskey* (1990), 136 Ill. 2d 66, 85, 554 N.E.2d 192.

■ In the instant case, the State has not waived the standing issue. The defendant's disclaimer of any possessory interest in the seized items does clearly appear in the record during the suppression hearing. Nor did the State take an inconsistent position in the trial court by claiming that the gun was criminally possessed by the defendant. (See *Steagald*, 451 U.S. at 208-09, 68 L. Ed. 2d at 43, 101 S. Ct. at 1646.) The defendant's lack of permission from the rightful owner to use the automobile also appears in the record. Thus, even if the search had not been valid, we conclude that the defendant had no standing to suppress the evidence obtained.

## II

It was not reversible error for the trial court to deny defendant a continuance during the trial. The denial of a continuance to procure a witness is within the sound discretion of the trial court. (*People v. Marshall* (1988), 165 Ill. App. 3d 968, 980, 521 N.E.2d 538.) This discretion will not be interfered with except in cases of clear abuse, especially after the trial has begun. *People v. Boyce* (1977), 51 Ill. App. 3d 549, 560, 366 N.E.2d 914.

■ Even though the defendant requested the continuance to procure an alibi witness, the decision by the trial court was not a clear abuse of discretion. Upon discovering that the defense was not ready to tender its witness, the court first dealt with other matters and then took a prolonged lunch break. Despite this delay, the defense was unable to locate or communicate with its witness, nor could it provide any assurances that its witness would be arriving in the near future. Thus, the court was within its discretion in denying the motion when it was unclear how long a continuance would be necessary and whether it would ultimately be of any benefit whatsoever. *People v. Watts* (1990), 195 Ill. App. 3d 899, 917, 552 N.E.2d 1048.

■ Defendant contends that the witness was duly subpoenaed by the defense, obligating the trial court to grant defendant latitude to confront a situation in which the defendant was not at fault in the nonappearance of his witness. We disagree. The earlier telephone contacts counsel claims he had with the witness were not sufficient to *guarantee* the witness' receipt of the subpoena from his mailbox, as

anyone could have been talking on the other end of the telephone line and claimed receipt of the subpoena. The day before the trial, even defense counsel could only predict, "It is my understanding that [the alibi witness] will be physically available tomorrow morning." Understandings are not sufficient to enforce the trial court's contempt power, and the defense was dilatory for failing to duly subpoena the only witness it had to present for its case. The defense had "ongoing conversations" with the witness and possessed his mailbox address, either of which should have been sufficient to allow delivery of a statutorily valid subpoena during the 40 days between issuance of the subpoena and the trial, if the defense had put forth the necessary effort. When the defendant has failed to exercise diligence to insure that the witness would be available, the motion for a continuance will be denied. (*Boyce*, 51 Ill. App. 3d at 561.) The trial court did not abuse its discretion by so holding in the instant case.

## III

The trial court properly allowed defendant the option of declaring a mistrial, and it was not error for the court to accede to defendant's request to continue with the proceedings. "[A]n accused may not ask the trial court to proceed in a certain manner and then contend in a court of review that the order which he obtained was in error." (*People v. Lowe* (1992), 153 Ill. 2d 195, 199, 606 N.E.2d 1167.) "Where a party, as here, acquiesces in proceeding in a given manner, he is not in a position to claim he was prejudiced thereby." (*People v. Jackson* (1991), 145 Ill. 2d 43, 94, 582 N.E.2d 125.) Otherwise, counsel, by not giving the court the opportunity to correct error at trial, will gain the advantage of obtaining a reversal through his own failure to act. (*Jackson*, 145 Ill. 2d at 94.) This rule continues to apply to errors involving jury deliberations. See *People v. Norfleet* (1994), 259 Ill. App. 3d 381, 392, 630 N.E.2d 1231.

The cases defendant relies upon are inapposite, as they deal with circumstances where defendant has failed to object to plain error during trial, as opposed to the positive acceptance of trial procedure by defendant which occurred in the instant case. If the trial court had not acceded to defendant's request to refuse a mistrial and continue the jury deliberations, serious double jeopardy problems would have resulted. (See *People v. Camden* (1987), 115 Ill. 2d 369, 378-79, 504 N.E.2d 100.) The trial court's ruling was correct, and defendant has waived any contention that errors which he accepted may result in reversal of his conviction.

## IV

Defendant contends that the consecutive sentence imposed by the trial court violates the Illinois statute on consecutive terms of imprisonment, which states:

> "The court shall not impose a consecutive sentence *** unless, having regard to the nature and circumstances of the offense and the history and character of the defendant, it is of the opinion that such a term is required to protect the public from further criminal conduct by the defendant, the basis for which the court shall set forth in the record." (730 ILCS 5/5—8—4(b)(West 1992) (formerly Ill. Rev. Stat. 1991, ch. 38, par. 1005—8—4(b)).)

However, the Illinois Supreme Court has held that the statutory requirement that reasons be "set forth in the record" is permissive and thus can be waived by the defendant by not requesting the reasons for a particular sentence. (*People v. Hicks* (1984), 101 Ill. 2d 366, 462 N.E.2d 473.) In the instant case, the defendant did not request the particular reasons for his consecutive sentence, so the issue was waived by him. *People v. Woodrome* (1992), 237 Ill. App. 3d 220, 604 N.E.2d 486.

■ Moreover, an adequate statement does appear in the record to explain why the trial court thought the consecutive sentence was necessary to protect the public safety. In sentencing the defendant, the court stated that "considering your background, considering your conduct on this date, and your prior conduct on other dates, Mr. Allen, [it] indicates to us an inability on your part to conform your conduct to the norms of society." The court's statement is sufficient to indicate the court believed the consecutive sentence was necessary to protect the public from further criminal conduct by defendant. See *People v. Powell* (1987), 159 Ill. App. 3d 1005, 512 N.E.2d 1364.

For the foregoing reasons, we affirm.

Judgment affirmed.

MURRAY, P.J., and McNULTY, J., concur.