Argued January 20, affirmed February 25, 1972

# STATE OF OREGON, *Respondent*, *v.*
# SANDRA DOUGHERTY (No. C-60695), *Appellant.*

493 P2d 1383

*Douglas M. Fellows,* Portland, argued the cause for appellant. On the brief were Richard A. Reichsfeld, and Hedrick & Fellows, Portland.

*Thomas H. Denney,* Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Lee Johnson, Attorney General, and John W. Osburn, Solicitor General, Salem.

Before SCHWAB, Chief Judge, and LANGTRY and FORT, Judges.

SCHWAB, C. J.

Recently, in *State v. Taggart,* 7 Or App 479, 491 P2d 1187 (1971), we reserved decision on the question of under what circumstances a hotel employe could give valid consent to police to conduct a warrantless search of a room occupied by a hotel guest. Since, in the case at bar, defendant's convictions for possession of heroin, ORS 474.020, and marihuana, ORS 474.020, were based on evidence seized from her in a Portland hotel, we reach that question in this case.

During early September of 1970, police were in-

vestigating the activities of one David Villemyer, whom they suspected of selling narcotics. On September 15, the police learned by phone from an informant that Villemyer was operating out of the Cornelius Hotel.

Also, on September 15, the police received a call from an employe of that hotel requesting assistance in evicting Villemyer. The hotel employe explained to the police that one week prior to September 15, Villemyer, whom he knew as David Pearson, had rented a room and paid in advance. During the week the employe had become concerned by the large number of people going to Villemyer's room, some of whom appeared to be under the influence of narcotics when they left. Therefore, on September 15, at about 2 p.m.—the hotel's checkout time—the employe had informed Villemyer that he could not have the room for another week, and that he must leave. Villemyer indicated he was not going to leave, which led to the employe's call to the police.

The police then proceeded to the hotel, arriving about 3 p.m., and were admitted to Villemyer's room by the hotel employe who had called them. The officers did not have a search or arrest warrant. They immediately observed in plain sight substantial amounts of illegal drugs. The officers decided to wait for Villemyer.

About 6 p.m., Villemyer, one Lowry, and the present defendant entered the room. The officers identified themselves, warned all three of their rights, and placed Villemyer under arrest.

To secure the situation, one officer frisked Lowry for weapons and another asked the present defendant to open her purse for a weapons check. Looking into the purse, the officer immediately saw

what he believed to be a marihuana cigarette and a syringe. He asked what these were, and the defendant replied they were, respectively, a "joint" and a "fit," an abbreviation for "outfit," a slang expression for a syringe and needle.

At that point the officer arrested defendant for possession of narcotics and searched her purse further, discovering balloons that contained heroin.

 If the officers' entry into Villemyer's hotel room was lawful, then their observations once in the room justified their remaining in hopes of apprehending Villemyer. *See, State v. Chinn,* 231 Or 259, 373 P2d 392 (1962); *State v. Steffes,* 2 Or App 163, 465 P2d 905, Sup Ct *review denied* (1970). When Villemyer, Lowry and the defendant entered the room, requiring defendant to open her purse in order to inspect it for weapons was a proper precaution for the police to take for their own safety.① *See, United States v. Berryhill,* 445 F2d 1189, 1193 (9th Cir 1971). And, having observed marihuana and narcotics paraphernalia in the purse as a result of the check for weapons, the police were justified in arresting defendant and searching her purse more thoroughly incident to that arrest.

---

① Defendant argues the intrusion into her purse was not a weapons frisk, but that the police were specifically searching for drugs. The officers present at the time of defendant's arrest testified to the contrary, and the trial court apparently accepted the officers' version as true. We will not reconsider the evidence *de novo.* State v. Fisher, 5 Or App 483, 484 P2d 864 (1971).

As a related point, defendant contends that a frisk for weapons must be limited to a "pat down" of a person's outer clothing. While this proposition is generally valid, it depends on the circumstances of each case. Here the trial court had the benefit of viewing defendant's purse; although it was not included in the record, it was described as "large" and "bulky." Under these circumstances a reasonable frisk for weapons can include looking into the purse.

Thus, ultimately the legality of this seizure turns on whether the officers were lawfully in Villemyer's room, which depends on whether the hotel employe could give effective consent to their entry.

■ It is clear that once a hotel guest has checked out and vacated a room, hotel employes can consent to a warrantless search. *Abel v. United States,* 362 US 217, 80 S Ct 683, 4 L Ed 2d 668, *rehearing denied,* 362 US 984 (1960). It is also clear that hotel employes cannot effectively consent to a warrantless search of a guest's room during the period for which the room was rented. *Stoner v. California,* 376 US 483, 84 S Ct 889, 11 L Ed 2d 856 (1964). The facts at bar, however, present an intermediate situation on which the law is less settled. *See,* Annotation, 31 ALR2d 1078 (1953).

■ Since here the period for which Villemyer rented the room had ended, and since a hotel employe had told him he must leave, we believe the facts are closer to those of *Abel v. United States,* supra, and thus hold the entry into Villemyer's room was lawful based on the consent of the hotel employe. Whatever subjective expectation of privacy Villemyer may have had under these circumstances was not objectively reasonable. *See, State v. Stanton,* 7 Or App 286, 490 P2d 1274 (1971); *State v. Taggart,* supra.

Other cases which have reached the same result include *People v. Van Eyk,* 56 Cal2d 471, 15 Cal Rptr 150, 364 P2d 326 (1961), *cert denied* 369 US 824, 82 S Ct 838, 7 L Ed 2d 788 (1962), and *State v. Roff,* 70 Wash2d 606, 424 P2d 643 (1967). However, the analysis in both cases relies somewhat more on property concepts than we feel is necessary, or appropriate. *See, State v. Taggart,* supra; *State v. Stanton,* supra.

■ We do not deem it significant that the narcotics officers claimed they were at the hotel to assist in Villemyer's eviction. Under the facts of this case they were entitled to rely on the hotel employe's consent to enter Villemyer's room to search for evidence of crime.[2]

Affirmed.

---

[2] Defendant devotes a substantial amount of argument to the proposition that there never was probable cause to search Villemyer's room. We fail to see the relevance of this contention since no showing of probable cause is necessary when there is an effective consent to a search.