520 So.2d 1206 (1988)
STATE of Louisiana
v.
Lionel GRIFFIN.
Nos. 87-KA-460, 87-KA-462.
Court of Appeal of Louisiana, Fifth Circuit.
February 8, 1988.
Writ Denied April 29, 1988.
*1207 Bruce G. Whittaker, Indigent Defender Bd., Gretna, for defendant-appellant.
Dorothy A. Pendergast, Asst. Dist. Atty., Research & Appeals, Gretna, for State.
Before BOWES, GAUDIN and DUFRESNE, JJ.
BOWES, Judge.
The defendant, Lionel Griffin, was charged with possession of cocaine in violation of LSA-R.S. 40:967 (district court No. 86-3530) and possession of marijuana in violation of LSA R.S. 40:966 (district court No. 86-3531).[1] After a hearing, the trial judge denied the Motion to Suppress the Evidence. The defendant later withdrew his pleas of not guilty in both matters and entered pleas of guilty subject to the provisions of State v. Crosby, 338 So.2d 584 (La.1976). The trial judge sentenced the defendant to serve eighteen months at hard labor for the charge of possession of cocaine and six months for the charge of possession of marijuana. The latter sentence was made concurrent with the former.
The facts of this case are as follows: On October 29, 1986, Sergeant Edith Evans was on patrol in an area prone to incidents of loitering and disturbance of the peace. She stopped in front of the Black Rose Lounge, where she spoke to a reserve police officer, who informed her that a call had come in from the lounge, that a black male, wearing a light gray jacket and *1208 brown jeans, about five-eight or five-nine, about 165 pounds, had been involved in a disturbance in which shots were fired. Sergeant Evans then returned to her patrol.
A few minutes later, as Sergeant Evans passed the corner of Carmadelle and Westbank Expressway, about one block away, she heard three gunshots. She went in the direction of the gunshots and observed the defendant, who fit the description previously given by the reserve officer, walking in the street. Sergeant Evans stopped the defendant and conducted a pat-down search for weapons. During that search, Sergeant Evans felt a small hard object in the defendant's left sock. Further investigation revealed the object to be a small syringe and a bag of white powder. At that point, she considered the defendant to be under arrest.
Sergeant Evans continued a more thorough search of the defendant and discovered a small plastic bag filled with green vegetable-type matter in the defendant's right front pants pocket. The substances were later identified as cocaine and marijuana. As a result of the seizures, Griffin was arrested and transported for booking.
The defendant presents only one assignment of error:
The trial court erred in denying appellant's Motion to Suppress.
Assignment of Error No. 1
Defendant argues that the search of his sock which revealed the hypodermic syringe and drugs exceeded the bounds of the limited frisk articulated in Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).
The defendant does not seriously contend that the defendant was not lawfully stopped by Sergeant Evans, nor does he argue that the subsequent search of his pants pocket, which revealed the marijuana was not based on a lawful arrest, if this court finds, as did the trial court, that the pat-down, which included his sock, was within the permitted Terry, supra type frisk.
Our review of the circumstances under which a police officer may frisk a person for weapons after a lawful stop for questioning, as was the case here, is limited initially by LSA-C.Cr.P. art. 215.1, which holds:
Art. 215.1 Temporary questioning of persons in public places; frisk and search for weapons
A. A law enforcement officer may stop a person in a public place whom he reasonably suspects is committing, has committed, or is about to commit an offense and may demand of him his name, address, and an explanation of his actions.
B. When a law enforcement officer has stopped a person for questioning pursuant to this Article and reasonably suspects that he is in danger, he may frisk the outer clothing of such person for a dangerous weapon. If the law enforcement officer reasonably suspects the person possesses a dangerous weapon, he may search the person.
C. If the law enforcement officer finds a dangerous weapon, he may take and keep it until the completion of the questioning, at which time he shall either return it, if lawfully possessed, or arrest such person.
A frisk or pat-down incident to an investigatory stop may be conducted, but the purpose of allowing a limited weapons search is to prevent harm to the police officers and ensure their safety. State v. Wade, 390 So.2d 1309 (La.1980) Cert. denied 451 U.S. 989, 101 S.Ct. 2326, 68 L.Ed. 2d 848 (1981); State v. Lee, 485 So.2d 555 (La.App. 5 Cir.1986). The officer need not be absolutely certain that the individual is armed. State v. Wade, supra. The circumstances under which an officer may make such a pat-down for weapons must be based on whether or not a reasonably prudent man would be warranted in the belief that his safety or that of others was in danger. State v. Keller, 403 So.2d 693 (La.1981). Such belief "is not reasonable unless the officer is `able to point to particular facts from which he reasonably inferred that the individual was armed and dangerous'." State v. Keller, id. at 697 *1209 (quoting Sibron v. New York, 392 U.S. 40, 88 S.Ct. 1889, 20 L.Ed.2d 917 (1968)).
In the instant case, Sergeant Evans knew of the shooting incident at the lounge, and had a description of the suspect supplied by the reserve officer on duty. She immediately returned to her patrol and, just one block from the lounge, heard three gunshots. She immediately turned her vehicle around and, within a few moments, spotted the defendant, who matched the description of the suspect given to her just minutes before. Under these circumstances, the officer was reasonable in her belief that her safety or that of others was in danger, which justified the weapons frisk.
Defendant argues that even if the stop and frisk is valid, there is no justification for the seizure of the hypodermic syringe and packet of drugs from his sock since the officer exceeded the permissible scope of a pat-down type frisk.
At the hearing on the Motion To Suppress, Sergeant Evans testified as follows:
Q. The syringe was large enough to be a knife?
A. As far as a pocket knife, no, sir, but I've noticed they now have smaller weapons, smaller instruments like used in karate and stuff like that, that can be used as weapons.
Q. And you feared that the defendant would be able to get to this in his sock prior to your asking him questions or whatever?
A. Yes, sir, they can always come off the car and fight with me and get to it.
In LaFave, Search and Seizure, A Treatise on the Fourth Amendment, 2nd Edition, 1987, Section 9,4(C), p. 521-523, it was noted:
[The] important question which must be resolved in order to assess the conduct of a police officer who has performed a frisk is that of what tactile sensations produced by the pat-down will justify a further intrusion into the clothing of the suspect.
At the outset, it must be asked what the legal test is at this point. In Terry, the Court stressed that after patting down the suspects Officer McFadden "did not place his hands in their pockets or under the outer surface of their garments until he had felt weapons." But surely this does not mean that the policeman must know beyond any doubt that what he has felt is a weapon; the officers "need not be absolutely certain that the individual is armed." Sometimes it is said that he must feel "an object which he reasonably believes to be a dangerous weapon," which may be an appropriate test if this reasonable belief does not require that it be possible to determine that it is more probable then not that the object is a weapon. As some courts put it, it must be asked whether the object "feels like a weapon," whether there was anything in the officer's "perception to indicate it was not a weapon either because of size or density."
. . . . .
... If the object felt is hard, then the question is whether its "size and density" is such that it might be a weapon. But because "weapons are not always of an easily discernible shape," it is not inevitably essential that the officer feel the outline of a pistol or something of that nature. [footnotes omitted] [citations omitted]
We find that under the facts of this case, Sergeant Evans had a reasonable concern for her safety when she felt a hard object which could have been some type of smaller weapon, although clearly not a gun. We hold, therefore, she was justified in searching the defendant's sock.
A police officer may make a warrantless arrest when he has "reasonable cause to believe that the person to be arrested has committed an offense, although not in the presence of the officer." C.Cr.P. art. 213 (3). Probable cause exists when the facts and circumstances within the arresting officer's knowledge and of which he has reasonable and trustworthy information are sufficient to justify a man of average caution in the belief that the person to be arrested has committed or is *1210 committing an offense. State v. Davis, 407 So.2d 666 (La.1981); State v. Bearden, 449 So.2d 1109 (La.App. 5 Cir.1984) writ denied 452 So.2d 179 (1984).
When a lawful arrest is made for probable cause, a warrantless search incident thereto of the person and the area in his immediate control is permissible. State v. Andrishok, 434 So.2d 389 (La.1983); State v. Wiley, supra. Once the contraband was found in defendant's sock, Sergeant Evans had probable cause to arrest the defendant. State v. Wiley, 507 So.2d 841 (La.App. 5 Cir.1987). The marijuana subsequently found in defendant's pocket was seized legally in a search incident to a lawful arrest. This assignment of error lacks merit.
Accordingly, for the foregoing reasons, we affirm the conviction and sentence of the defendant as to the possession of cocaine charge (district court No. 86-3530) and defendant's conviction for the possession of marijuana charge (district court No. 86-3531).
AFFIRMED.
NOTES
[1] In the trial court, these matters were treated as though consolidated, although no motion or order to consolidate can be found in the record. An order to consolidate these matters in this court for appeal was signed June 25, 1987.