THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v. PETER SANTORO et al., Defendants-Appellees.

First District (6th Division)  No. 1—88—1076

Opinion filed December 22, 1989.

Cecil A. Partee, State's Attorney, of Chicago (Inge Fryklund and Linda Woloshin, Assistant State's Attorneys, of counsel), for the People.

Randolph N. Stone, Public Defender, of Chicago (Callie Baird and Vicki Rogers, Assistant Public Defenders, of counsel), for appellees.

PRESIDING JUSTICE EGAN delivered the opinion of the court:

This is a State appeal from an order allowing the defendants' motion to suppress evidence.

The defendants, Peter Santoro and John Kopel, were arrested on August 10, 1987. The State charged both defendants with possession of cocaine; Kopel was also charged with possession of cannabis. At the suppression hearing, the only witness was Officer Thomas Villa, who was called by the defendants. The defendants also introduced some documents. Villa's testimony, in substance, is as follows:

At approximately 4 a.m. on August 10, 1987, Villa, a Burbank police officer for five years, was on routine patrol duty in a marked police vehicle driving southbound at the 8100 block of Long Avenue in the Village of Burbank. He noticed a Ford LTD, approximately three car lengths in front of him, that had a partially open trunk with a bicycle sticking out. He believed the trunk obscured the driver's vision, a traffic violation. He then ran an information check on the car's license plate, 733 788.

The radio communications dispatcher, Vicki Guiterrez, informed Villa that the plate was registered to a 1973 Dodge van owned by Peter Santoro and that the plate had expired in November 1986. He thought that Guiterrez might have told him that the status of the plate was unavailable.

After receiving that information, Villa, who was alone, called over his radio for a backup and stopped the car. Santoro was driving, and Kopel was a passenger. It was dark out as Villa approached the car, and he turned on his flashlight. He went to the car window, which had been lowered, asked Santoro for his driver's license and used his flashlight to see into the car. He saw between Santoro's feet the butt of a gun sticking out from underneath Santoro's seat. At the time he saw the gun he was asking for Santoro's driver's license. After he observed the gun he pulled out his own gun and told both men to get out of the car; both men did so. For his own safety he had them put their hands on the vehicle, and he waited for his backup to come before he did any further investigation. After his backup arrived, he gave Kopel a "pat-down search."

While patting down Kopel to check for weapons, he came across a hard object in the crotch area of Kopel's pants. He had Kopel pull down his pants, and Villa retrieved a metallic pipe in a clear plastic bag that also contained a green leafy substance that appeared to Villa to be cannabis. He continued his search and found a cardboard cigarette package in Kopel's left shirt pocket. That package contained cigarettes and a small white envelope, identified on the street as a "snow seal," that contained a white powdery substance.

Officer Danny Gafney searched Santoro and pulled from his left pants pocket a white envelope "snow seal" with white powder, sus-

pected cocaine. Gafney conducted a full search of Santoro, not just a pat-down search. After the defendants were arrested, Villa took the gun from the car. It was a toy replica of an Uzi submachine gun. Villa took both men to the police station and issued a traffic ticket to Santoro for fictitious plates. He never gave Santoro a ticket for driving while his vision was obstructed.

Before he issued the ticket, Villa received the computer printout on the license plate. The printout indicated that the status of the plate was "unavailable." No stops were in effect; there were no convictions of Santoro in the preceding 12 months, and he was not wanted on any warrants.

The defense established that the plates had been transferred from a 1973 Dodge to the 1978 Ford LTD on May 28, 1987, more than two months before Santoro's arrest.

In the ruling sustaining the motion to suppress, the judge made several observations with some of which we agree, but we do not agree with his determination of what constituted the ultimate factual issue. It appears to us that the issue in this case was misunderstood by defense counsel and the judge. The issue was not whether Villa had probable cause or reasonable grounds to issue the ticket for defective plates; the issue was whether he was justified first in stopping the vehicle, then in conducting a pat-down search and finally in conducting a full search. It is our judgment that Officer Villa was justified in taking each step.

It would needlessly lengthen this opinion to recite all that was said by the judge, but some of his remarks are appropriately set forth. During the hearing on the first day, the assistant State's Attorney objected to questions concerning what had transpired after the defendants were taken to the police station. He said, "The only thing in issue is the stop of the defendants and the subsequent search." The judge correctly agreed when he responded, in part, "The number one issue that is brought here today is the question of a police officer's credibility as to the stop and to the subsequent search."

A lengthy discussion ensued between the judge and counsel over whether the proof would establish that on the day of the arrest the license plate on the Ford LTD was, in fact, registered with the Secretary of State on the Ford LTD and not the Dodge van. The State's Attorney would not agree that the proof would show registration on the LTD, and the case was continued.

Approximately 3½ months later, the hearing resumed. The defendant offered documentary evidence showing that the plates had been transferred from the 1973 Dodge to the 1978 Ford LTD on May

28, 1987, more than two months before Santoro's arrest. Therefore, it was clear that Santoro had not violated the registration statute.

Immediately after both sides had rested the court said, "Motion to suppress is granted." When the State's Attorney asked the basis of the judge's ruling, the judge said the following:

"It's very simple. It's the credibility of the officer. He had the report in his hand at the time he wrote 'fictitious plates.' There was no evidence to show that in any way it was traced back.

\* \* \*

*I really don't blame the officer for stopping him,* but the problem is I can't put myself in that position because I have got to be available to have this thing done as the court of law in which there has to be probable cause for the purpose of the stop. It's kind of on a higher standard than what we think of generally applicable.

What happened here, in reality, is that the bicycle kicked inquiry. *I would be suspicious of somebody having a bicycle in the back.* The problem is upon the check in with the license plates and things of that nature, now the officer is positive with the question of trying to, in effect, justify the stop. That's where it pops. Even this document [the computer printout] that they put in here, the status is not available. *The credibility really comes down to issue when he goes and writes the ticket for fictitious plates and no document of any form that there is fictitious plates. It comes all the way back down the spindle.*" (Emphasis added.)

■■ ■ Initially, we observe that the trial judge applied the wrong standard applicable to the initial stop. The test is not whether Officer Villa had "probable cause" to make the stop; the test is whether he had a "reasonable suspicion" that the driver of the vehicle had violated the law. (*People v. Repp* (1988), 165 Ill. App. 3d 90, 94, 518 N.E.2d 750, 753; see also *People v. Ohlinger* (1989), 185 Ill. App. 3d 763, 542 N.E.2d 382.) But the application of the wrong standard, in our judgment, did not cause the error. We interpret all of the judge's remarks to mean that he did not believe that the officer had probable cause *to issue the ticket for fictitious plates,* that he believed that the officer knew he did not have probable cause to issue the ticket and that the officer issued the ticket in an attempt to justify the initial stop. What the officer believed or knew at the time he issued the ticket is not determinative of the issue.

It is uncontradicted that the police officer saw a bicycle in the car

trunk causing a possible traffic violation. The judge believed that testimony. It is also uncontradicted that the officer called in and received information that the car had plates which were registered to another vehicle and which had expired. Villa's testimony is not only uncontradicted on this point but is corroborated by the computer printout which was introduced by the defendants. Regardless of whether Villa knew that the current status of the license registration was unavailable, it is uncontroverted that he did not know the status. Therefore, at the time of the stop, Villa had a "reasonable, articulable suspicion of criminal activity to warrant the stop." (*Repp*, 165 Ill. App. 3d at 94.) It is of no significance that subsequent events did not bear out his suspicion. Any holding that the evidence in this case was insufficient to justify the initial stop would be clearly erroneous.

■ After the initial stop, the officer saw what appeared to be a weapon extruding from under Santoro's seat. At that point he had every right to suspect that he was dealing with someone more dangerous than a traffic law violator. It is again of no significance that the weapon later proved to be a toy. The order for both men to get out of the car was a minimal intrusion into the defendants' personal liberty, and a subsequent pat-down search of Kopel was justified under the circumstances.

A case similar on its facts to this case is *People v. Williams* (1975), 28 Ill. App. 3d 189, 328 N.E.2d 89, in which police officers stopped a vehicle for speeding at 6 a.m. The defendant was a passenger. Before stopping the car the officers ran a registration check on the license plate which showed that the vehicle was owned by a corporation. The driver had no driver's license, and a search of his person disclosed a cylindrical flask containing a white powder which the officer suspected was cocaine. The officer then told the defendant to get out of the car, and the officer searched him for the officer's protection. Before he searched the defendant he searched the car and found a revolver under the seat where the defendant was sitting. His search of the defendant disclosed heroin. The court upheld the search and cited *United States v. Berryhill* (9th Cir. 1971), 445 F.2d 1189, 1193, in which the court held as follows:

> "We think that *Terry* [*Terry v. Ohio* (1967), 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868] recognizes and common sense dictates that the legality of such a limited intrusion into a citizen's personal privacy extends to a criminal's companions at the time of arrest. It is inconceivable that a peace officer effecting a lawful arrest of an occupant of a vehicle must expose himself to a shot in the back from [the] defendant's associate because he

cannot, on the spot, make the nice distinction between whether the other is a companion in crime or a social acquaintance. All companions of the arrestee within the immediate vicinity, capable of accomplishing a harmful assault on the officer, are constitutionally subjected to the cursory 'pat-down' reasonably necessary to give assurance that they are unarmed."

See also *People v. Bradi* (1982), 107 Ill. App. 3d 594, 437 N.E.2d 1285.

We conclude, therefore, that Villa properly performed a pat-down search of Kopel and that in the course of that search and the later search of his shirt pocket properly discovered the evidence which the State sought to introduce.

In the trial court each defendant was represented by his own attorney and each filed his own motion to suppress. In this court both defendants are represented by the same attorney. In both the trial court and in this court they have presented the same argument and only that argument: The judge decided the case on the officer's credibility and concluded that the stop and search were unjustified. Kopel, the passenger, has not argued that a distinction should be made between the right to search a driver and the right to search a passenger. Nor has Santoro, the driver, made any attempt in the trial court or in this court to show or argue that the search by Gafney was unjustifiably extended beyond a pat-down search. Neither Gafney nor Santoro was called by the defendants to testify to the circumstances under which Santoro was searched. The record shows at least that Officer Gafney was justified in making a pat-down search. Villa testified simply that Gafney pulled from Santoro's left pants pocket a "white envelope with white powder, which they suspected was cocaine."

Since Santoro has not made any argument that Gafney's search was unreasonably extended and has introduced no proof to show that it was so unreasonably extended, any such argument is waived.

For these reasons we conclude that the motion to suppress should have been denied as to both defendants. The judgment of the circuit court is reversed.

Judgment reversed.

McNAMARA and LaPORTA, JJ., concur.