[No. G009740. Fourth Dist., Div. Three. June 26, 1991.]

THE PEOPLE, Plaintiff and Respondent, v.
ROBERT KEITH AUTRY, Defendant and Appellant.

**[Opinion certified for partial publication.\*]**

---

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of part I of the Discussion.

**COUNSEL**

Robison D. Harley, Jr., under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp and Daniel E. Lungren, Attorneys General, Richard B. Iglehart, Chief Assistant Attorney General, Harley D. Mayfield, Assistant Attorney General, and Esteban Hernandez, Deputy Attorney General, for Plaintiff and Respondent.

**OPINION**

SILLS, P. J.—A traffic officer asked Robert Autry to step out of his car for a "patdown" search. Autry complied and the officer felt two objects which were similar to hypodermic needles and syringes. The officer removed the objects—which were indeed two hypodermic needles and syringes—and arrested Autry, who was later found to have cocaine on him. Autry now claims the officer did not have enough information to justify the

(warrantless) patdown search, nor enough information to believe the two objects were weapons. A United States Supreme Court case, *Pennsylvania* v. *Mimms* (1977) 434 U.S. 106 [54 L.Ed.2d 331, 98 S.Ct. 330], disposes of the first claim. Common sense disposes of the second.

## FACTS

Sometime after midnight a police officer noticed Autry driving in an erratic manner similar to a person under the influence of alcohol or drugs. The officer decided to pull Autry over and check his condition. He turned on the overhead lights of his police car, and Autry pulled into a gas station. The area was dark. The interior of Autry's car was not well illuminated.

The officer walked to the driver's door and asked Autry for identification. Autry said he had none, but gave his name as Robert Edwards and supplied a date of birth. He was wearing a zippered jacket which bulged around and concealed his waist. He was fidgety. His hands kept going into his jacket or the seat next to him. The officer told him to keep his hands where they could be seen.

The officer walked back to his patrol car and called his dispatcher, who told him they could not find anyone with Autry's supposed name and birth date. The officer asked for another patrol car to be sent to the scene and went back to Autry's car to confirm the name. The officer noticed Autry's hands kept moving back and forth, and the officer told him two more times to keep his hands visible. Again the officer asked Autry for his name and again was not able to confirm it. Autry told the officer he had recently done time for a robbery. The officer then decided to do a patdown search for his own safety. He asked Autry to step out of the car. Autry stepped out. The bulge was no longer noticeable, but the jacket still concealed Autry's waist. The officer thought the jacket might be concealing a weapon.

On Autry's left side, in his jacket, the officer felt two hard, long and slender objects. At one point they were very narrow, at the other somewhat wide. The two objects felt like hypodermic syringes with attached needles.

The officer then placed handcuffs on Autry and took him to the patrol car where he seized the two objects which were, indeed, syringes with needles. Autry was then arrested for unauthorized possession of hypodermic needles and syringes (Bus. & Prof. Code, § 4149). After taking him to jail, the officer found cocaine in Autry's pants pocket. Aubry now appeals from his possession of cocaine conviction.

## DISCUSSION

### I*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . .

### II

■  Autry argues an officer may not remove drug-related items "whose tactile contours will not support a threatening possibility." In this case, there is no question the officer believed the objects in defendant's jacket were hypodermic needles and syringes, and not, say, small knives. The gravamen of defendant's argument, then, is that hypodermic needles do not present a "threatening possibility."

This is apparently a question of first impression in California, though the answer would appear obvious. A hypodermic needle certainly presents a "threatening possibility." Indeed, a hypodermic needle in the possession of someone who might be a drug addict is a potentially deadly object.

A "deadly" weapon is any object which is "used in such a manner as to be capable of producing and likely to produce, death or great bodily injury." (*In re Jose R.* (1982) 137 Cal.App.3d 269, 275-276 [186 Cal.Rptr. 898].) *In Jose R.*, a needle (apparently a straight pin) inserted in an apple to be given to a teacher was enough to support a finding of assault with a deadly weapon.

Here the patdown search revealed the contours of instruments far more deadly than a pin hidden in a teacher's apple. The search revealed the presence of a needle and syringe in the possession of someone who, judging from his driving, may have been a user of illegal drugs. Drug abusers are not commonly recognized as among the more fastidious in our society, so the reasonable inference would be the needles were probably unsterilized.

It is now common knowledge intravenous drug users contract AIDS from contaminated hypodermic needles. (E.g., *State* v. *Wright* (1987) 221 N.J.Super. 123 [534 A.2d 31, 32].) Police officers understandably fear contracting AIDS or hepatitis from even accidental stabbings from hypodermic needles. (See *State* v. *Wilkinson* (1990) 56 Wn.App. 812 [785 P.2d 1139, 1141] [officer inquired about sharp objects and syringes because he was concerned about contracting AIDS or hepatitis].) In view of such circumstances,

---

*See footnote, *ante*, page 365.

a contaminated hypodermic needle is one of the more deadly objects one can imagine outside of firearms. There is presently no known cure for AIDS (*State* v. *Wright, supra,* 534 A.2d at p. 33) so a single nick or scratch may prove fatal.

A police officer might well prefer to face an assailant armed with a small-caliber pistol rather than a drug addict with a hypodermic needle. The officer might recover from a gunshot wound, but just the merest scratch from the needle could prove fatal. Like Hamlet, who dies from being nicked with a poisoned sword, an officer slashed with a contaminated needle would find no medicine in the world could save him.[1] The officer in this case was therefore quite prudent to remove the hypodermic needles and syringes from defendant.

Moreover, even without the prospect of AIDS, a hypodermic needle and syringe are easily employed as a weapon. If a pin concealed in an apple was a deadly weapon in *Jose R., supra,* 137 Cal.App.3d 269, a hypodermic needle should be here. It hardly takes the imagination of Alfred Hitchcock to think up any number of nasty ways a hypodermic needle and syringe can do grievous injury, at least in close combat. The judgment is affirmed.

Sonenshine, J., and Moore, J., concurred.

Appellant's petition for review by the Supreme Court was denied September 18, 1991.

---

[1] See Hamlet, act V, scene II, lines 310-335.