Robert Lee PERRY, Sr., Appellant
(Defendant),

v.

The STATE of Wyoming,
Appellee (Plaintiff).

No. 95–158.

Supreme Court of Wyoming.

Nov. 15, 1996.

Sylvia Lee Hackl, State Public Defender; Deborah Cornia, Assistant Public Defender; Gerald M. Gallivan, Director, Wyoming Defender Aid Program; Jason Bachlet and Barb Parnell, Student Interns, for Appellant.

William U. Hill, Wyoming Attorney General; Paul S. Rehurek, Deputy Attorney General; D. Michael Pauling, Senior Assistant Attorney General; Georgia L. Tibbetts, Assistant Attorney General; Prosecution Assistance Program, Theodore E. Lauer, Director, and David C. Holtz, Student Intern, for Appellee.

Before TAYLOR, C.J., and THOMAS, MACY, GOLDEN, * and LEHMAN, JJ.

THOMAS, Justice.

The issues in this case evolve from a pat-down search of Robert L. Perry, Sr. (Perry) on the occasion of the arrest of his son, Robert L. Perry, Jr. (Perry, Jr.), for driving with a suspended driver's license. The pat-down search resulted in the seizure of three hypodermic needles and Perry's arrest for possession of drug paraphernalia. After he was arrested, the vehicle he had been driving was impounded, and an inventory search of the vehicle was conducted. In the course of this search, a fanny pack was discovered, and further examination of the fanny pack disclosed a ziplock bag containing three or four ounces of marijuana. Perry was charged with the felony of possession of marijuana with intent to deliver, and he challenged the searches by a motion to suppress the evidence. When the district court ruled against him, Perry entered a conditional plea of guilty, reserving the right to challenge the

court's ruling on his motion to suppress the evidence. Perry claims the initial pat-down search was unlawful, thus, tainting all evidence discovered following that search, and he also contends the inventory search of the vehicle was unlawful for reasons independent of the pat-down search. We hold the challenged searches were lawful, specifically adopting the "automatic companion" rule as justifying the initial pat-down search. The decision of the trial court denying Perry's motion to suppress the evidence is affirmed in all respects, and the Judgment and Sentence is affirmed.

In his Brief of Appellant, Perry lists a statement of the issues as:

Argument I:

I. Whether Officer Kirby had a reasonable suspicion Mr. Perry was involved in criminal activity prior to initiating the *Terry* stop?

II. Whether Officer Kirby had a reasonable suspicion Mr. Perry was armed and dangerous prior to conducting a frisk for weapons?

III. Whether Officer Kirby reasonably believed the object felt during the pat down could be a weapon threatening officers at the scene of the detention?

IV. Whether the contraband nature of the object felt during the pat down for weapons was immediately apparent to Officer Kirby and therefore falls within the plain feel exception to the warrant requirement?

Argument II:

I. Whether the inventory search conducted by the police officers in this case was reasonable under the Fourth Amendment of the United States Constitution and Article I, § 4 of the Wyoming State Constitution.

In the State of Wyoming's Brief of Appellee, the issues are stated as:

I. Was Officer Kirby's pat-down weapons search of Appellant justified pursuant to the right of a police officer to search the outer clothing of a companion of a person subjected to a lawful arrest?

* Chief Justice at time of oral argument.

II. Was the inventory search in this case reasonable under the Fourth Amendment of the United States Constitution or Article I, Section 4 of the Wyoming State Constitution?

When Officer Kirby started the midnight shift on October 24, 1994, he was advised by officers from the afternoon shift, who were going off duty, to be on the lookout for a vehicle possibly driven by Perry, Jr. Officer Kirby was told, if Perry, Jr. was driving the vehicle, he was driving it illegally because his driver's license had been suspended.

Around midnight, Officer Jones radioed Officer Kirby and advised him he was heading east on the interstate following a car he suspected Perry, Jr. of driving. Officer Jones wanted to be certain Perry, Jr. was the driver and, after the vehicles had turned off the interstate, Officer Kirby drove past the vehicle. At that time, the car was following another vehicle driven by Perry.

Officer Kirby saw a younger person driving the second car, but he was not able to identify him as Perry, Jr. He did, however, identify the passenger as Paul Eddie (Eddie), a man whom he knew had a felony warrant for kidnapping outstanding against him in the state of Washington. Officer Kirby also knew Eddie allegedly had been involved in a shooting incident some six weeks previously.

When Officer Kirby passed them, both of the Perry vehicles turned into a Texaco station, and Officer Jones followed them into the parking lot. Officer Kirby turned his vehicle around and returned to the Texaco parking lot, arriving as Officer Jones got out of his car to speak with the occupants of the car driven by Perry, Jr. Perry, Jr. got out of the driver's side of his vehicle and went to the rear of the passenger side, where he met Officer Jones. The passenger, Eddie, got out of the right side of the vehicle and stood by the car door. Perry also got out of his vehicle and walked to the front passenger side of Perry, Jr.'s vehicle.

Officer Kirby heard Officer Jones ask Perry, Jr. for his driver's license, and he also heard Officer Jones tell Perry, Jr. that he was aware his driver's license had been suspended. Upon questioning, Perry, Jr. fur-nished Officer Jones an alias, stating his name was not Robert Perry, Jr. At this juncture, Officer Kirby approached Perry and asked him who he was. Perry furnished his correct name, Robert Perry, Sr., but, when asked, he said that Perry, Jr. was not his son. Officer Kirby then invited Perry to walk around the corner with him where Kirby said to Perry: "He has a suspended license. If you don't want to say anything to me don't say anything to me but don't lie about it." Perry's general response was that he did not want to get his son into any trouble.

When Perry and Officer Kirby returned to the car where the others were, Officer Smith also had arrived and was out of his car. Perry, Jr. was not cooperating with Officer Jones, and it appeared he was under the influence of alcohol. Officer Kirby surmised Officer Jones was about to place Perry, Jr. under arrest, so he started to assist Jones. As Kirby walked along the driver's side of Perry, Jr.'s car, he shined his flashlight in the car's window and observed a gun protruding from under the driver's seat. He informed the other two officers there was a gun in the car and, at approximately the same time, Officer Jones told Perry, Jr. he was going to jail for driving while his license was suspended.

Concerned for his safety and that of the other officers, Officer Kirby then patted down Perry's outer clothing to determine whether he had any weapons, while Officer Smith did the same to Eddie. Kirby's concern for safety was prompted by his knowledge of warrants issued in Utah for the arrest of Perry, Jr. for the manufacture or delivery of a controlled substance; prior anonymous tips that Perry, Jr. and Perry were involved in drug trafficking; a general observation that drug dealers often carry weapons; Eddie's alleged involvement in shooting and kidnapping incidents; and the discovery of the gun under the driver's seat in Perry, Jr.'s car. During the pat-down of Eddie, a knife was discovered, and controlled substances were found on both Eddie and Perry, Jr. Kirby wanted to be certain none of the three had any other weapons besides the gun in Perry, Jr.'s car.

In the course of Perry's pat-down search, Officer Kirby felt a hard item in Perry's front pocket. It was approximately five inches long and three-quarters of an inch wide. Kirby asked Perry what was in the pocket, and Perry replied it was an item he had just found. Kirby reached into Perry's pocket and pulled out three hypodermic needles. Perry was arrested for possession of drug paraphernalia. Officer Kirby took the gun from Perry, Jr.'s car, emptied out the shells, and placed the gun in his patrol car. In a search conducted incidental to Perry's arrest, Kirby also found a vial of amphetamines on Perry's person.

When Officer Kirby arrested Perry, he asked what Perry wanted to do with his vehicle. Perry stated the car belonged to someone else, and that person would need to make the decision regarding the vehicle because Perry did not want to make that decision. Officer Kirby conferred with another officer and learned the license plates on the vehicle Perry had been driving were Perry's, but the plates did not belong on the car. Kirby also discovered the vehicle was not properly registered and was not insured. When a check of the vehicle identification number was accomplished, the owner of the car was determined to be a woman from either Hunter or Huntington, Utah.

Following this investigation, Officer Kirby decided to impound Perry's car. His decision was based upon a number of factors: it was after midnight; Perry had been arrested for possession of drug paraphernalia; the car did not have proper registration or insurance; even if the owner of the vehicle could be located, she could not legally drive the car away; Perry had been warned two weeks previously that he should remedy the registration and insurance problems; and the owners of the parking lot preferred the car not be left in their lot overnight.

At the suppression hearing, the administrative sergeant for the police department, Sergeant Williams, summarized the standard, though unwritten, policy used to impound a vehicle. He testified:

> Those factors that Officer Kirby related very articulately are taken into consideration concerning the vehicle, whether it can be safely moved from the premises; if it is on a street; if it's in a private parking lot; if there is another person that can legally take responsibility for the vehicle; if it is legally able to be operated on the city streets.

The sergeant also related the reasons for impounding a vehicle pursuant to the departmental policy, testifying:

> If the vehicle is in violation of the law where the officer determines that the vehicle requires impoundment, such as an improper registration, no valid license plates, no insurance, driving while under the influence, driving while under suspension, those kinds of things.

Having arrested Perry and made the decision to impound the vehicle, Officer Kirby commenced an inventory of the contents of the car, also in accordance with departmental policy. This inventory was initiated prior to the arrival of the tow truck driver, whose job it was to remove the car from the scene. The policy behind the inventory, according to Officer Kirby, "is to protect people's property and to protect us from liabilities." At the suppression hearing, Sergeant Williams also testified concerning the procedure and policy with respect to the inventory of impounded vehicles:

> Very succinctly, if you have to impound a vehicle, if nobody takes custody and control of the vehicle, that it will be inventoried.

> \*    \*    \*    \*    \*    \*

> The officers are instructed to open all areas that they can get into to inventory, to look for valuables, to reduce liability factors for themselves, the City of Evanston, the Police Department, and to protect the personal property of the people who own the vehicle or those people that are in the vehicle, as well as getting into different areas of the vehicle. If there are closed containers within the vehicle, they are to open those and inventory those to protect, again, the City, the Department, themselves and the owners.

The officer who performs the inventory completes a departmental inventory form setting forth the contents of the vehicle.

During his inventory of the contents of the vehicle, Officer Kirby discovered a gray fanny pack. He opened the fanny pack to determine if there were any valuables that should be listed on the inventory form, and he found a ziplock bag containing three or four ounces of marijuana; a sandwich bag purporting to contain methamphetamine; a calculator, a decimal fraction conversion chart; a set of hand scales; some note paper and a pen; and more sandwich bags. After these items had been discovered, another officer on the scene completed the inventory of the contents of the vehicle and also the balance of the inventory form.

The discovery of the marijuana led to a charge against Perry of possession with intent to deliver a controlled substance in violation of WYO. STAT. §§ 35–7–1031(a)(ii) and 35–7–1014(d)(xiii) (1994). The charge was filed on October 25, 1994 and, after a preliminary hearing, Perry was bound over to the district court on November 28, 1994. At his arraignment on December 7, 1994, Perry entered a plea of not guilty. That was followed by a motion to suppress Perry's statements and any evidence obtained from the search of his person and the car he had been driving before he was arrested. Perry asserted this evidence was acquired through unlawful detention; an unlawful frisk; and an unlawful search of the vehicle in violation of his rights under the Fourth and Fourteenth Amendments to the Constitution of the United States [1] and under Article 1, §§ 4, 6, 7, and 34 of the Constitution of the State of Wyoming.

A hearing was held on Perry's motion to suppress on January 31, 1995 and, on February 15, 1995, the district court denied the motion. The district court ruled the frisk of Perry was reasonable to protect the officers, and the impoundment and inventory search of the car were reasonable and conducted in accordance with standard departmental procedures and policies. The final order denying Perry's motion to suppress was entered on March 3, 1995. Perry then changed his plea on April 19, 1995, by entering a conditional plea of guilty to possessing marijuana with intent to deliver while reserving his right to appeal the denial of his motion to suppress. On June 8, 1995, Perry was sentenced to a term of imprisonment of not less than one and one-half, nor more than three, years. His sentence was suspended, and he was placed on supervised probation for a period of three years. Perry appeals the denial of his motion to suppress.

In his first contention of trial court error, Perry complains Officer Kirby lacked reasonable suspicion of Perry's involvement in criminal activity prior to initiating a *Terry* stop. The reference is, of course, to *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). This claim of error is an obvious attempt to categorize this case erroneously. There was no stop of the kind discussed in *Terry.* At the time the officers approached the vehicle driven by Perry, Jr., they had probable cause to arrest Perry, Jr. because he was driving while his driver's license was suspended. The contact between Perry, Jr., Eddie, and the officers was initiated by approaching their vehicle after Perry, Jr. had voluntarily turned into the Texaco parking lot. Officer Jones' decision to initiate interrogation of Perry, Jr. and Eddie was premised upon adequate probable cause to arrest both. Previously, Officer Kirby had advised Officer Jones of the existence of an outstanding felony warrant against Eddie in Utah. Both Kirby and Jones believed Perry, Jr. was unlawfully driving his car while his driver's license was suspended. Furthermore, Kirby was aware Utah had warrants outstanding for the arrest of Perry, Jr. for the manufacture or delivery of a controlled substance.

Obviously Perry's situation was different. He voluntarily placed himself at the scene, got out of his car, and stood near the passenger side of Perry, Jr.'s car. The officers had no concrete information with respect to any criminal activities in which Perry had been involved. They had no reason to be concerned with Perry, nor the car he was driving, until he interjected himself into the scenario involving the officers, Eddie, and Perry, Jr.

---

**1.** Perry also cited the Fifth Amendment to the Constitution of the United States, but that consti-

tutional protection does not relate to detention, frisk, or search.

■ In *Collins v. State*, 854 P.2d 688, 691–92 (Wyo.1993), we adopted the three tiers of police encounters from the United States Court of Appeals for the Fifth Circuit:

> In our view, this area of the law is persuasively summarized by the United States Court of Appeals for the Fifth Circuit in *United States v. Berry*, 670 F.2d 583, 591 (5th Cir.1982):
>
>> We conclude, therefore, that Supreme Court holdings sculpt out, at least theoretically, three tiers of police-citizen encounters: communication between police and citizens involving no coercion or detention and therefore without the compass of the Fourth Amendment, brief "seizures" that must be supported by reasonable suspicion, and full-scale arrests that must be supported by probable cause. See, eg., *United States v. Setzer*, 654 F.2d 354 (5th Cir.1981); *United States v. Elmore*, 595 F.2d 1036, 1041 (5th Cir.1979), *cert. denied*, 447 U.S. 910, 100 S.Ct. 2998, 64 L.Ed.2d 861 (1980).

Perry's initial contact with the officers fits the first tier. In *Collins*, we held it is not necessary for police officers to have a reasonable suspicion or probable cause to arrest in order to initiate contact with a citizen at the first tier. *Collins*, 854 P.2d at 695.

Perry voluntarily approached and stood by Perry, Jr.'s car, where he listened and watched as the encounter with his son unfolded. He interjected himself into the scenario by positioning himself in and around the police officers and the occupants of Perry, Jr.'s vehicle. Upon being questioned by Officer Kirby, Perry initially denied the driver of the other vehicle was his son. After the private dialogue with Kirby, Perry then admitted the driver of the other vehicle was his son, stating generally he simply did not want to get his son into any trouble. Because of Perry's voluntary involvement, it became clear he was there as a companion of Eddie and Perry, Jr., even though Perry was in a different vehicle.

It was soon after this dialogue with Perry that Kirby discovered the gun in Perry, Jr.'s car. The three men apparently were there together. Kirby was aware of felony warrants outstanding against the son and Eddie; rumors of a prior shooting incident involving Eddie; the illegal driving by Perry, Jr. because his driver's license was suspended; prior anonymous tips Perry and Perry, Jr. were involved in drug trafficking; the fact drug dealers frequently carry weapons; and the actual discovery of a weapon under the car seat in Perry, Jr.'s car. As the trial court properly ruled, Officer Kirby had compelling reasons to be concerned about his safety and that of the other two officers, feeling they all could be in serious jeopardy.

■ This justifiable concern for officer safety in the context of a lawful arrest of Perry, Jr. leads to our holding that Officer Kirby's frisk of Perry was lawful under the "automatic companion" rule. As adopted in the United States Courts of Appeals for the Second, Fourth, Fifth, Seventh, and Ninth Circuits, the "automatic companion" rule affords an officer the right to frisk companions of an arrestee for the possible concealment of weapons. *See United States v. Vigo*, 487 F.2d 295 (2d Cir.1973) (holding a search of the purse of a companion of the arrested person is reasonable); *United States v. Poms*, 484 F.2d 919 (4th Cir.1973) (upholding frisk of companion who arrived on the scene during the arrest); *United States v. Tharpe*, 536 F.2d 1098 (5th Cir.1976) (upholding a weapons frisk of two passengers in the vehicle driven by the person arrested), *overruled on other grounds by United States v. Causey*, 834 F.2d 1179 (5th Cir.1987); *United States v. Simmons*, 567 F.2d 314 (7th Cir. 1977) (holding scope of search not necessarily limited to a pat-down search); *United States v. Berryhill*, 445 F.2d 1189 (9th Cir.1971) (upholding a search for weapons in the arrestee's wife's handbag). Other state courts have adopted the rule. *See People v. Santoro*, 192 Ill.App.3d 895, 140 Ill.Dec. 57, 549 N.E.2d 708 (1989) (allowing a companion to be frisked where a weapon, which turned out to be a toy gun, was found under the passenger's seat); *State v. Clevidence*, 153 Ariz. 295, 736 P.2d 379 (Ct.App.1987) (upholding a pat-down search of a robbery suspect's companion where police found a gun under the suspect's car seat); *Commonwealth v. Hook*, 313 Pa.Super. 1, 459 A.2d 379 (1983) (allow-

ing a weapons pat-down search where a gun was found on the companion, even though no probable cause existed for companion's arrest); and *State v. Dougherty,* 8 Or.App. 267, 493 P.2d 1383 (1972) (allowing weapons search of companions pursuant to an arrest in a hotel room).

Perry was a companion of Perry, Jr. and Eddie, both of whom were arrested at the scene. At the suppression hearing, Officer Kirby articulated his concern about safety when he decided to do the pat-down search of Perry:

> And there are three persons [Perry, Eddie and the son] there. These persons are, obviously, associated with each other. It's also because I have information that some of these people are involved with drugs and the drug trade. It is the fact that there is a gun in the vehicle. It's a combination of everything that makes me feel that for the safety of myself and the other officers there that we ought to make sure there is no weapons on these people.

In *Terry,* the Supreme Court of the United States forcefully relied upon the necessity to preserve officer safety in potentially explosive situations:

> In addition [to the government's interest in investigating crime], there is *the more immediate interest of the police officer in taking steps to assure himself that the person with whom he is dealing is not armed with a weapon that could unexpectedly and fatally be used against him.* Certainly it would be unreasonable to require that police officers take unnecessary risks in the performance of their duties.

*Terry,* 392 U.S. at 23, 88 S.Ct. at 1881 (emphasis added).

In *Berryhill,* 445 F.2d at 1193, the Court expanded on the need for officers to protect themselves from companions of a criminal suspect in potentially violent situations:

> We think that *Terry* recognizes and common sense dictates that the legality of such a limited intrusion [pat-down or frisk for weapons] into a citizen's personal privacy extends to a criminal's companions at the time of arrest. It is inconceivable that a peace officer effecting a lawful arrest of an occupant of a vehicle must expose himself to a shot in the back from defendant's associate because he cannot, on the spot, make the nice distinction between whether the other is a companion in crime or a social acquaintance. All companions of the arrestee within the immediate vicinity, capable of accomplishing a harmful assault on the officer, are constitutionally subjected to the cursory "pat-down" reasonably necessary to give assurance that they are unarmed.

The concern of these courts for officer safety is a compelling justification. We hold Officer Kirby acted as a reasonably prudent police officer when he patted down Perry's outer clothing to preserve his safety and that of the other two officers present at the scene. *See Goettl v. State,* 842 P.2d 549 (Wyo.1992); *Terry.* Officer Kirby was entitled to do the pat-down search under the automatic companion rule.

Other than his inappropriate reliance upon *Terry,* Perry does not argue that the initial pat-down search was conducted improperly. Instead, Perry argues the object felt by Officer Kirby during the frisk was inconsistent with the size and shape of a weapon. It follows, according to Perry, that the officer had no right to remove it from Perry's pocket. When Officer Kirby first patted down Perry's outer clothing, he encountered a hard object, approximately five inches long and three-quarters of an inch wide. At the suppression hearing, Kirby testified he "didn't know if this [the object] was a weapon." He did state, however:

> But I'm not going to have him pull it out and then—if it's a weapon, my—my stress is going to go up and his stress is going to go up. So I'm going to pull that out myself and check on it.

In *Terry,* the Supreme Court emphasized that a pat-down search necessitates a limited intrusion extending to "the officer the power to take necessary measures to determine whether the person is in fact carrying a weapon and to neutralize the threat of physical harm." *Terry,* 392 U.S. at 24, 88 S.Ct. at 1881. The pat-down search itself, however, must "be confined in scope to an intrusion

reasonably designed to discover guns, knives, clubs, or other hidden instruments for the assault of the police officer." *Terry*, 392 U.S. at 29, 88 S.Ct. at 1884.

The law does not require the officer to be absolutely certain the object felt is a weapon. A leading treatise sets out the appropriate standard.

> Under the better view, then, a search is not permissible when the object felt is soft in nature. If the object felt is hard, then the question is whether its "size or density" is such that it might be a weapon. But because "weapons are not always of an easily discernible shape," it is not inevitably essential that the officer feel the outline of a pistol or something of that nature. Somewhat more leeway must be allowed upon "the feeling of a hard object of substantial size, the precise shape or nature of which is not discernible through outer clothing," * * *.

WAYNE R. LAFAVE & JEROLD H. ISRAEL, SEARCH AND SEIZURE § 9.5(c) (3d ed. 1996).

█ The three hypodermic syringes Kirby took from Perry's pocket can be described correctly as "other hidden instruments" which were not "soft in nature." *Terry*; SEARCH AND SEIZURE. Exercising the requisite leeway, Officer Kirby felt "a hard object of substantial size" which had an imprecise "shape or nature * * * not discernible through outer clothing." The object Officer Kirby encountered reasonably could have been a weapon, and he was justified in determining whether it was or was not. This justification is particularly pertinent in light of other decisions that acknowledge syringes or their needles can be deadly weapons like guns, knives or clubs. *See State v. Hunter*, 615 So.2d 727 (Fla.Ct.App.1993), *review denied*, 626 So.2d 205 (Fla.1993); *People v. Autry*, 232 Cal.App.3d 365, 283 Cal.Rptr. 417 (1991); *see also State v. Griffin*, 520 So.2d 1206 (La.Ct.App.1988); *Napier v. State*, 473 So.2d 644 (Ala.Crim.Ct.App.1985). In light of the facts of this case, *United States v. Del Toro*, 464 F.2d 520 (2d Cir.1972), is peculiarly

significant. In a protective frisk situation, the United States Court of Appeals for the Second Circuit upheld the seizure of a folded $10 bill containing a small amount of cocaine on the basis of the arresting officer's testimony that he feared the presence of a knife or razor blade. Because of concern for his safety under the circumstances, Officer Kirby had reasonable justification to believe what he felt was a weapon, and he was entitled to remove it from Perry's pocket and examine it.[2]

Upon discovering the three syringes, Officer Kirby's contact with Perry moved to the third tier of communication between the police and citizens. *Collins*. Officer Kirby then had probable cause to arrest Perry for possession of drug paraphernalia, and he did arrest him. Kirby impounded the vehicle Perry had been driving and commenced his inventory of the car's contents. The inventory was completed by another officer after Kirby found marijuana in a fanny pack in the car.

Perry claims error with respect to the impoundment of the vehicle and the resulting inventory search. Perry argues this was unreasonable under the Fourth Amendment to the Constitution of the United States and Article 1, § 4 of the Constitution of the State of Wyoming because neither was accomplished pursuant to standard police procedures. As an ancillary claim, Perry asserts the marijuana and other evidence seized during the inventory should be excluded because the procedures were not in writing.

█ We have not required that standard police procedures with respect to impoundment and inventory searches be in writing. Instead, we have accepted testimony by police officers of the standards and their testimony that the appropriate procedures were followed in a particular situation. *See Vargas–Rocha v. State*, 891 P.2d 763 (Wyo.1995); *Bennett v. State*, 794 P.2d 879 (Wyo.1990). The Supreme Court of the United States also accepts the testimony of an officer to establish the standard procedures in protecting

---

**2.** Because Officer Kirby's justification was his reasonable suspicion that the object in Perry's pocket could have been a weapon, we need not, nor do we, analyze whether Officer Kirby would

have been justified in removing the object under the plain feel exception to the warrant requirement if it had not been suspected of being a weapon.

owners' property while impounded and to protect police from possible assaults with weapons. *Colorado v. Bertine,* 479 U.S. 367, 107 S.Ct. 738, 93 L.Ed.2d 739 (1987). Other courts hold written procedures are not mandatory in order to justify a lawful impoundment and inventory search of a vehicle. *State v. Weide,* 155 Wis.2d 537, 455 N.W.2d 899 (1990); *United States v. Kornegay,* 885 F.2d 713 (10th Cir.1989), *cert. denied,* 495 U.S. 935, 110 S.Ct. 2179, 109 L.Ed.2d 508 (1990); *United States v. Frank,* 864 F.2d 992 (3d Cir.1988), *cert. denied,* 490 U.S. 1095, 109 S.Ct. 2442, 104 L.Ed.2d 998 (1989); *Madison v. United States,* 512 A.2d 279 (D.C.Ct.App. 1986). While standard procedures are necessary to protect citizens from the potential of uncontrolled discretion on the part of police officers, there is no requirement the standards be in writing. We said in *Vargas–Rocha,* 891 P.2d at 767: "An inventory search of an impounded automobile is not unreasonable under the Fourth Amendment when it is conducted pursuant to standardized police procedure." *See also Bertine; South Dakota v. Opperman,* 428 U.S. 364, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976); *Bennett.*

Perry's vehicle was not properly registered and was not insured, and the license plates did not match the vehicle. At the suppression hearing, Sergeant Williams testified the standard procedure is to impound a vehicle if it is in violation of some law. There can be no question several laws were violated in this instance. In addition, Sergeant Williams testified the policy is to impound the vehicle if there is no one available to take custody and control of the car. In this instance, Perry, Perry, Jr., and Eddie were arrested; the record owner of the car was out of state and unavailable; and no one was left at the scene who could drive the car from the private parking lot. Impoundment was appropriate and necessary according to the policy of the department, and that policy was followed in the correct manner.

Furthermore, Sergeant Williams testified the standard procedure is to inventory the vehicle once it has been impounded. In *Berryhill,* 445 F.2d at 1192, the court articulated the scope of a lawful search following arrest:

The law seems to be well settled that when the driver of a motor vehicle is lawfully arrested in the vehicle, the arresting officer has the right to search the vehicle contemporaneously with and as an incident to the lawful arrest, the vehicle being a thing "under the accused's immediate control." *Preston v. United States,* 376 U.S. 364, 367, 84 S.Ct. 881, 883, 11 L.Ed.2d 777 (1963). The contemporaneous search may be for weapons or for fruits or implements of the crime, *Preston, supra,* at 367, 84 S.Ct. at 883, 11 L.Ed.2d 777, or for evidence relevant to the crime.

■ As a final matter, Sergeant Williams testified the standard procedure during any inventory was to open closed containers and to get into all different areas within the vehicle "to look for valuables, to reduce liability factors, * * * and to protect the personal property of the people who own the vehicle or those people that are in the vehicle." Officer Kirby followed this procedure when he opened the fanny pack located in the Perry vehicle and discovered marijuana. The standard procedure for inventorying the contents of the car produced "implements of the crime." *Berryhill.* We hold the impoundment and inventory search of the car Perry drove were reasonable since they were accomplished in accordance with standardized policies and procedures of the police department. We adopt the automatic companion rule justifying pat-down searches of companions of arrested persons and uphold the pat-down search of Perry and the seizure of the hypodermic needles.

The decision of the district court in denying the motion to suppress is affirmed in all respects.

LEHMAN, Justice, dissenting.

I respectfully dissent. I believe the "automatic companion" rule is inconsistent with the narrow scope of the *Terry* exception to the warrant requirement and thus lacks constitutional muster.

Warrantless searches and seizures are per se unreasonable. The burden falls on the State to show that a search and seizure is valid or that an exception to the rule foreclosing warrantless searches and seizures is

applicable. *Dickeson v. State,* 843 P.2d 606, 610–11 (Wyo.1992). The United States Supreme Court in *Terry v. Ohio* recognized an exception for a protective pat-down search for weapons based on specific and articulable facts from which an officer could reasonably infer a suspect is armed and dangerous. 392 U.S. 1, 27, 88 S.Ct. 1868, 1883, 20 L.Ed.2d 889 (1968). In *United States v. Berryhill,* the United States Court of Appeals for the Ninth Circuit expressed its view that *Terry* extends to an arrestee's companions: "All companions of the arrestee within the immediate vicinity, capable of accomplishing a harmful assault on the officer, are constitutionally subjected to the cursory 'pat-down' reasonably necessary to give assurance that they are unarmed." 445 F.2d 1189, 1193 (9th Cir.1971).

The Supreme Court has not directly addressed the applicability of the *Terry* exception to a search of the companion of an arrestee. *United States v. Flett,* 806 F.2d 823, 826 (8th Cir.1986). However, the Court has observed that "[b]ecause *Terry* involved an exception to the general rule requiring probable cause, [the] Court has been careful to maintain its narrow scope." *Dunaway v. New York,* 442 U.S. 200, 210, 99 S.Ct. 2248, 2255, 60 L.Ed.2d 824 (1979). And the Court refused to uphold a protective frisk of a patron in a bar based only on that person's presence during a search of the premises pursuant to a valid search warrant. *Ybarra v. Illinois,* 444 U.S. 85, 93, 100 S.Ct. 338, 343, 62 L.Ed.2d 238 (1979). These decisions lead me to conclude that the rule, based not on reasonable suspicion but on a person's "unfortunate choice of associates," impermissibly extends the *Terry* exception in violation of the Fourth Amendment. *United States v. Bell,* 762 F.2d 495, 499 (6th Cir.1985); *see also Flett,* 806 F.2d at 826–28.

I am not persuaded otherwise by the cases the majority cites to support the adoption of the automatic companion rule. Despite the fact that several of the federal circuit cases cited *Berryhill* with apparent approval, none involved a situation where a search of a companion was found reasonable solely because of that person's association with and proximity to an arrestee. Rather, those cases involved particular, specific facts which justified the search at issue. *See, e.g., United States v. Simmons,* 567 F.2d 314, 318–20 (7th Cir.1977) (search of items within immediate control of a person present during custodial arrest of companion for a recent crime in which guns were used held reasonable because objective probability of danger to law enforcement existed under the circumstances); *United States v. Vigo,* 487 F.2d 295, 298 (2d Cir.1973) (search of a passenger's purse proper given the fact that a loaded concealed gun had just been found on the driver); *United States v. Poms,* 484 F.2d 919, 921–22 (4th Cir.1973) (search of defendant's bag justified where officers had information from reliable informant that Poms *always* carried a weapon in his shoulder bag, defendant identified himself as Poms and then reached for the bag).

The majority argues that Perry mischaracterized the case because there was no *Terry* stop involved. I agree that the initial contact with Perry began as a "first-tier" encounter, involving no coercion or detention and therefore not implicating the Fourth Amendment. *See Collins v. State,* 854 P.2d 688, 691–92 (Wyo.1993); *United States v. Berry,* 670 F.2d 583, 591 (5th Cir.1982). However, once Officer Kirby decided to conduct a pat-down search of Perry, the encounter moved into the second tier and Fourth Amendment requirements came into play. At that point the predicate to the search was a reasonable belief, based on particular facts, that Perry was armed and dangerous. *Terry,* 392 U.S. at 27, 88 S.Ct. at 1883; *see also Collins,* 854 P.2d at 695; *Sibron v. New York,* 392 U.S. 40, 64, 88 S.Ct. 1889, 1903, 20 L.Ed.2d 917 (1968).

The automatic companion rule replaces the fine line of the *Terry* reasonable suspicion requirement with a broad brush, rendering virtually any search of an arrestee's companions reasonable, regardless of the circumstances. In my view, the rule is unwarranted and unconstitutional, and I believe the court went too far in adopting it. Therefore, I dissent.